IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD JAY VAUGHN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 3:23-cv-00580 |
| | ) Judge Aleta A. Trauger |
| KENNETH NELSEN, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

Before the court are petitioner Donald Vaughn's Objections to Magistrate Judge's Ruling on Motion to Amend (Doc. No. 76), objecting to that portion of the Magistrate Judge's Order ("MJ Order") (Doc. No. 74) denying in part the petitioner's Motion to Amend (Doc. No. 68). The respondent, Kenneth Nelson in his official capacity as the Warden of Riverbend Maximum Security Institution, where the petitioner is incarcerated, has filed a Response arguing that the Order should be affirmed in its entirety. (Doc. No. 79.) The petitioner filed a Reply. (Doc. No. 81.)[1] For the reasons set forth herein, the MJ Order will be affirmed in part and modified in part.

---

[1] Although the Magistrate Judge entered the Order granting in part the Motion to Amend, neither the Clerk nor the petitioner filed the proposed Amended Petition as a stand-alone docket entry. The respondent nonetheless considered the Amended Petition as filed as of the entry of the Order. He filed a Supplemental Answer after seeking and being granted an extension of the deadline for filing a supplemental answer to the Amended Petition. (Doc. Nos. 78, 80, 82.) The petitioner then filed an unauthorized and inappropriate "Reply in Support of Amended Petition" (Doc. No. 83), which the court has not considered in ruling on the present Objections.

I. BACKGROUND

Vaughn pleaded guilty in the Criminal Court for Davidson County, Tennessee to two counts of aggravated rape and received a total sentence of forty-eight years of incarceration. Judgment was entered on March 14, 2011. (Doc. No. 12-1 at 26.) After the denial of his Motion to Withdraw Guilty Plea, his conviction and sentence were affirmed by the Tennessee Court of Criminal Appeals. *State v. Vaughn*, No. M2011-00937-CCA-R3CD, 2013 WL 1461774 (Tenn. Crim. App. Apr. 11, 2013). The state court later denied post-conviction relief. *Vaughn v. State*, No. M2021-01180-CCA-R3-PC, 2022 WL 2719783, at *9 (Tenn. Crim. App. July 14, 2022), 2022), *perm. app. denied* (Tenn. Dec. 14, 2022).

The petitioner now seeks relief in this court under 28 U.S.C. § 2254. He filed his original *pro se* Petition on June 7, 2023. (*See* Doc. No. 1.) Counsel first entered an appearance for the petitioner on January 18, 2024. (Doc. No. 50.) That attorney was granted permission to withdraw on June 10, 2024 (Doc. No. 58), and current counsel entered an appearance on July 8, 2024 (Doc. No. 59). On August 15, 2024, the petitioner, through counsel, filed the Motion to Amend that is the subject of the current Objections, along with the proposed Amended Petition. The respondent opposed the motion (Doc. No. 71), and the petitioner filed a Reply (Doc. No. 72).

The MJ Order granted in part and denied in part the Motion to Amend. (Doc. No. 74.) As the Magistrate Judge recognized, by the time the Motion to Amend was filed, the one-year statute of limitations governing petitions under § 2254 had expired, so the claims in the proposed Amended Petition are time-barred unless they relate back to the original Petition. (Doc. No. 74 at 3.) The Magistrate Judge found that the first proposed amended claim for ineffective assistance of counsel "merely supplements the same argument raised in [the] original petition"; he therefore granted the petitioner leave to amend his Petition with respect to this claim. (*Id.* at 4–5.) Neither party objects to that part of the MJ Order.

The petitioner's second proposed amended claim alleges that the prosecution violated the petitioner's Fourteenth Amendment right to due process when it failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 93 (1963). The Magistrate Judge found that this claim was not raised in the original Petition, does not relate back, and is now time-barred. (Doc. No. 74 at 6–7.) The Magistrate Judge also found that the petitioner does not meet the "'demanding' actual-innocence standard," so the untimeliness of the claim cannot be excused on that basis. (*Id.* at 7.) Accordingly, the Magistrate Judge denied the petitioner leave to amend his petition to add this claim on the grounds of futility. (*Id.* at 10.)

The petitioner's third proposed amended claim is a claim of ineffective assistance of appellate counsel. The Magistrate Judge found this claim, too, to be time-barred, and he rejected the petitioner's argument that the untimeliness should be excused by his actual innocence. The Magistrate Judge denied leave to amend the Petition to add this claim.

The petitioner's Objections assert that this court should conduct a *de novo* review of his Motion to Amend and should grant leave to add all three of the proposed new claims. (Doc. No. 76.) The respondent contends that the standard that applies to non-dispositive magistrate judge orders applies here and that the petitioner fails to show, under that standard, that the Order should be set aside. (Doc. No. 79.) The petitioner filed a Reply, again asserting that *de novo* review applies and pointing out that both the Magistrate Judge and the respondent apparently overlooked language in his "Attachment" filed in support of the habeas Petition ("Attachment"), in which the plaintiff asserted that certain "photos taken by the detectives immediately after the alleged rape were made available for the first time to post-conviction counsel ten years after the alleged . . . rape." (Doc.

No. 81 at 1–2 (quoting Doc. No. 1-13 at 34)[2].)

## II. STANDARD OF REVIEW

When a magistrate judge issues an order on a nondispositive matter or recommends disposition of a dispositive motion, any party has fourteen days within which to "serve and file objections" to the order or recommended disposition. Fed. R. Civ. P. 72(a), (b)(2). The district court's resolution of such objections differs somewhat depending upon whether the matter is dispositive or nondispositive. The district court "must consider timely objections" to a nondispositive order and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). But the court must "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The parties here appear to dispute the standard of review that should be applied to the Magistrate Judge's Order (styled as an Order rather than a Report and Recommendation) denying in part the petitioner's Motion to Amend. The petitioner asserts, without discussion (but citing 28 U.S.C. § 636(b)(1)(A), which pertains to nondispositive pretrial motions), that the court should conduct *de novo* review. (Doc. No. 76 at 1.) The parties agree, however, that where, as here, the issue is one of law, this court's review is *de novo*. The court therefore conducts a *de novo* review of those portions of the MJ Order to which the petitioner objects.

## III. DISCUSSION

### A. Brady Claim

The petitioner argues that the Magistrate Judge erred as a matter of law in concluding that the relation back doctrine did not apply to his proposed new claim under *Brady v. Maryland*, 373

---

[2] The Attachment is effectively a memorandum in support of the habeas Petition and comprises pages 18–60 of Doc. No. 1-13. The court cites herein to the CM/ECF pagination of the Attachment.

U.S. 83 (1963), that the prosecution withheld material evidence. The court reviews this issue *de novo*.

The Antiterrorism and Effective Death Penalty Act imposes a "1-year period of limitation" on the filing of an application for the writ of habeas corpus by a state prisoner who seeks to challenge his state convictions in federal court. 28 U.S.C. § 2244(d)(1). Such applications "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." *Id.* § 2242; *Mayle v. Felix*, 545 U.S. 644, 654 (2005).

"Federal Rule of Civil Procedure 15 sets forth those procedural rules." *Watkins v. Stephenson*, 57 F.4th 576, 579 (6th Cir.), *cert. denied sub nom. Watkins v. Chapman*, 144 S. Ct. 222 (2023). Rule 15 generally permits a party to amend a civil complaint or a habeas petition with "leave" of a district court and directs the court to "freely give leave when justice so requires." *Id.*; Fed. R. Civ. P. 15(a)(2).

However, when an amended petition is filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1), the amended petition will be timely only if, as relevant here, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *Watkins*, 57 F.4th at 579. This means that, as in ordinary civil cases, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664. The Court explained that, under this reading of Rule 15(c), relation back will "ordinarily [be] allowed 'when the new claim is based on the same facts as the original pleading and only changes the legal theory.'" *Id.* at 664 n.7 (quoting 3 J. Moore *et al.*, Moore's Federal Practice § 15.19[2] (3d ed. 2004)). However, "[a] claim that 'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth'

will not so relate back." *Howard v. United States*, 533 F.3d 472, 476 (6th Cir. 2008) (quoting *Mayle*, 545 U.S. at 650).

It is undisputed that the timeliness of claims in the Amended Petition depends on whether they relate back. In the Attachment filed with his original Petition, the petitioner asserts that he was denied "the effective assistance of counsel at all stages of the proceedings." (Doc. No. 1-13 at 31.) In alleging the facts in support of this claim, the petitioner takes issue with his defense counsel's failure to "investigate the photos of the alleged injury to the victim," specifically referring to photographs that were made available to defense counsel, and the petitioner, prior to his plea agreement. (*Id.* at 34.) In addition, however, the petitioner adds:

> There were valid arguments that there were no bite marks or any physical injury to the victim to begin with. *In fact, photos taken by detectives immediately after the alleged rape were made available for the first time to post-conviction counsel ten years after the alleged . . . rape.* The photos that were taken by the detectives demonstrated that there were no injuries found on the victim's body immediately after the alleged rape. This is significant because the detective's photographs predated other photos taken weeks later by the victim's mother [*i.e.*, the photos the petitioner saw prior to entering a plea and that allegedly showed injuries].

(*Id.* (emphasis added).)

In his proposed Amended Petition, the petitioner further develops these allegations:

> 37) As already mentioned, Vaughn was especially preoccupied with a defense based on a lack of injury to the alleged victim. . . . However, not long before trial, trial counsel showed Vaughn photos from the State, showing that the alleged victim had a bite mark on her arm.
>
> 38) Bruising such as a bite mark would seem to constitute an injury. Therefore, in light of this evidence, trial counsel basically felt that Vaughn had no plausible defense.
>
> 39) Many years after sentencing—during postconviction—the detective disclosed new photo(s) to the prosecutor. The new photos were only stored on the detective's own computer, never before turned over—not even to the prosecutor. The new photo(s) depicted the alleged victim's arm, and they were taken of the alleged victim, shortly after the incident. They showed that her arm had no bite mark at all.

Case 3:23-cv-00580    Document 84    Filed 10/27/25    Page 6 of 11 PageID #: 2126

(Doc. No. 68-1 ¶¶ 37–39 (internal citations to the record omitted).) Based on these factual allegations (and others), the petitioner seeks to assert a claim that his rights under the Fourteenth Amendment were violated by the state's failure to produce exculpatory evidence material to guilt or innocence, under *Brady*.

Construing the original *pro se* Petition liberally, the court finds that the new *Brady* claim relates back to the filing of the original Petition, insofar as it is "based on the same facts as the original pleading and only changes the legal theory." *Mayle*, 545 U.S. at 664 n.7. While Count II of the proposed Amended Petition obviously "asserts a new ground for relief," it is supported by facts that *do not* differ in "time [or] type from those the original pleading set forth." *Id.* at 650. It is supported by facts alleged in the original Petition, though the Amended Petition adds a few details and context. The court, therefore, will set aside the MJ Order insofar as it denied leave to amend the Petition to add a *Brady* claim on the grounds that the claim would be time-barred.[3]

The MJ Order did not address the respondent's alternative argument that the claim is also procedurally defaulted, and the court declines to address that argument in the first instance. The court will modify the MJ Order to grant the petitioner leave to pursue Count II, but the respondent remains free to argue (as he did in response to the Motion to Amend) that the claim is procedurally defaulted (as the petitioner himself acknowledges (*see* Doc. No. 68 at 2)) and that the procedural default is not excused.

---

[3] The MJ Order focuses on the petitioner's failure to make a *Brady* "argument" and also takes issue with his failure to "direct the Court to any language in his attachment to the petition (Docket No. 1-13 at 18–102) making such an argument." (Doc. No. 74 at 6.) The issue, however, is whether the new claim ("argument") arises from the same common nucleus of facts, and the petitioner, in his Reply, responded to the respondent's timeliness argument by citing the precise language in his Attachment articulating the facts supporting his *Brady* claim. (*See* Doc. No. 72 at 3–4 (quoting Doc. No. 1-13 at 34).)

B.   Ineffective Assistance of Appellate Counsel

The petitioner also sought leave to amend his petition to add a new claim for ineffective assistance of appellate counsel, on the basis that his counsel on direct appeal "failed to make any argument in support of his contention that the trial court erred by denying [the petitioner's] motion to withdraw his guilty pleas." (Doc. No. 68-1 at 27–28 (quoting *State v. Vaughn*, No. M2011-00937-CCA-R3CD, 2013 WL 1461774, at *4 (Tenn. Crim. App. Apr. 11, 2013)).) The petitioner admits that this claim was procedurally defaulted but asserts that he can show cause and prejudice to excuse the default. (*Id.* at 29.)

The MJ Order denied leave to amend the Petition to add this claim on the grounds that it, too, is untimely and that the untimeliness is not excused by the petitioner's actual innocence. (Doc. No. 74 at 9–10.) The petitioner's Objections make no effort to argue that his claim of ineffective assistance of appellate counsel relates back to his original Petition. Rather, he doubles down on his argument that the untimeliness is excused by evidence of actual innocence.

The Sixth Circuit recognizes that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citations omitted). However, "tenable actual-innocence gateway pleas are rare." *Id.* To make a threshold showing of actual innocence, a petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citation omitted). This standard is "'demanding' and seldom met." *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). And, although not an absolute bar, a prisoner's delay in raising an actual innocence claim is "a factor in determining whether actual innocence has been reliably shown." *Id.* at 387.

This court finds no error in the Magistrate Judge's assessment of the petitioner's actual innocence claim. Under the standard articulated by the Supreme Court in *Schlup v. Delo*, 513 U.S. 298 (1995), there is a distinction between exculpatory evidence that casts doubt on the credibility of a witness, thus weakening the case against the petitioner, and evidence that has the effect of exonerating the petitioner. As the Sixth Circuit has explained

> "[A]ctual innocence" means factual innocence, not mere legal insufficiency. . . . This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases.

*Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (citing *Schlup*, 513 U.S. at 324; *House*, 547 U.S. at 552–53; other internal citations and quotation marks omitted).

As an example of this distinction, the Sixth Circuit pointed to the facts in *House*, in which the petitioner's murder conviction was based primarily on the "finding of [the victim's] blood on House's jeans and House's semen on [the victim's] person." *Id.* at 744. On collateral review, House established conclusively that the blood got on his jeans "due to the negligent spillage of blood from [the victim's] autopsy in the same evidence box carrying his jeans" and that the semen found on the victim was actually the victim's husband's semen. *Id.* Despite this new evidence that "effectively dismantl[ed] the State's entire case," it was only "*after* House provided a credible confession by [the victim's] husband as the true perpetrator did the Court find that he met the actual-innocence test to permit his [otherwise procedurally barred] claim to proceed." *Id.* (citing *House*, 547 U.S. at 548–53).

This example conclusively establishes that the petitioner in this case cannot overcome the untimeliness of Count III through a showing of actual innocence. First, the petitioner argues only

that "if the suppressed photos really show that the purported victim went so far as to bite her own arm to fabricate a rape charge, then it is indeed plausible—even likely—that Vaughn can show actual innocence." (Doc. No. 72 at 4.) He attacks the MJ Order as "flawed . . . because anyone who would manufacture a bite mark would easily lie about other injuries." (Doc. No. 76 at 9.) In other words, his purportedly new evidence serves to attack the credibility of the victim, but it does nothing to actually exonerate the petitioner.

Second, the petitioner's reference to plausibility and likelihood demonstrates his misunderstanding of the demanding nature of *Schlup*—and he is simply wrong when he asserts that the *Schlup* standard is "more lenient compared to the standard for insufficient evidence." (*Id.* (citing *Schlup*, 513 U.S. at 330).) *Schlup*, to the contrary, requires the petitioner to show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. While this standard is lower than the "clear and convincing" evidence required in other contexts, it is higher than the "sufficiency" standard required for a constitutional conviction, as set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Hubbard*, 98 F.th at 744. That is, "*Jackson* asks whether sufficient evidence exists such that the government could constitutionally convict. *Schlup* asks whether the petitioner actually committed the crime." *Id.*

In short, the petitioner's purported new evidence is not sufficient to establish actual innocence. Consequently, he cannot use actual innocence to excuse the untimeliness of his claim of ineffective assistance of appellate counsel. Because the petitioner has failed to show that the MJ Order reaching that conclusion is contrary to law, his Objections to that part of the MJ Order will be overruled.

## IV. CONCLUSION

For the reasons set forth herein, the petitioner's Objections will be overruled in part, and the MJ Order will be affirmed in part and modified in part. The court will set aside that portion of the MJ Order finding the petitioner's proposed *Brady* claim to be untimely and denying the Motion to Amend insofar as it seeks to amend the original Petition to bring that claim. The MJ Order will be modified to provide that the petitioner may file his Amended Petition, with the understanding that Count III of the Amended Petition is time-barred, and the respondent remains free to argue that Count II is procedurally barred.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge